IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 08-CR-20272 JTF/TMP |
| RICKEY GROVES, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## REPORT AND RECOMMENDATION
_____

Before the court by order of reference is defendant Rickey Groves's Motion to Suppress Eyewitness Identification, filed on July 12, 2012. (ECF No. 204.) On August 17, 2012, the court held a suppression hearing. Present were Assistant U.S. Attorney David Biggers, defense counsel Stephen Leffler, and defendant Rickey Groves. The court heard testimony from Major Michael Williams, Officer Anthony Parks, and Sergeant Joseph Poindexter of the Memphis Police Department ("MPD"). The court also admitted as evidence a number of photographic arrays and accompanying forms utilized by the MPD to conduct photographic lineups during their investigation of Groves. For the reasons below, it is recommended that Groves's Motion to Suppress be denied.

### I. PROPOSED FINDINGS OF FACT

The court has carefully considered the evidence presented at the hearing, including the witnesses' demeanor as they testified.

The court finds the government's witnesses to be credible, and therefore adopts their version of events as its findings of fact. In April 2008, the MPD investigated a series of robberies at restaurants in Memphis: a McDonald's located at 3377 Winchester Road, a McDonald's at 1755 Getwell Road, The Kettle Restaurant at 4139 Winchester Road, and a Popeye's at 4720 Showcase Boulevard. The MPD developed Groves as a suspect in these robberies. As part of their investigation, MPD officers met with several witnesses to the robberies and presented these witnesses with photographic lineups. Generally, the procedures followed by the MPD in conducting these photographic lineups involved presenting the witness with a document displaying photographs of six individuals with similar appearances, and then asking the witness to identify, if possible, the perpetrator of the alleged crime from among the array of photographs. While a number of the witnesses were unable to provide positive identifications during their photo lineups, four witnesses were able to positively identify Groves. These witnesses were Lavonzell Kirkwood, Tina Cathey, Paul Dumas, and Ronald Lee. The lineups presented to Kirkwood, Cathey, and Dumas were administered by Officer Parks, and the lineup presented to Lee was administered by Sergeant Poindexter.

Officer Parks administered each photographic lineup, using

procedures implemented by the MPD.[1]  He contacted each witness and arranged a time to meet with him or her.  At each meeting, he presented the witness with a document created by the MPD titled "Advice to Witness Viewing Photographic Display" ("Advice Form").  The Advice Form states the following:

> 1.  The photographic display will contain pictures of persons of similar descriptions in similar poses.
>
> 2.  There is no significance to the order in which the photos appear.
>
> 3.  The person pictured may or may not have anything to do with the suspect offense and I am not to assume that the guilty party must be one of the persons represented.
>
> 4.  During the interviewed [sic] process, no one is to give me any hints or suggestions or attempt to influence my identification in any way.
>
> 5.  If I make an identification, it will be done in writing.
>
> 6.  I am to make no identification unless I am positive of such identification.

At the bottom of each Advice Form are blank spaces for the witness and officer to sign, and for the witness to choose whether or not he or she was able to make a positive identification.

Officer Parks orally went through the six bullet points on the

---

[1]According to Major Williams's testimony, the MPD employs a simultaneous photographic lineup approach, which involves showing the witness an array of photographs displaying the suspect and other individuals with similar features.  These MPD photographic identification procedures have been accredited by the Commission on Accreditation for Law Enforcement Agencies, a national organization that sets standards and best practices for various law enforcement activity.

Advice Form with each witness. Next, he presented each witness with a photographic array displaying Groves and five other individuals with similar appearances. Officer Parks assembled this photo array with the aid of a computer program utilized by the MPD, called the Mug Shot Program, which takes the most recent booking photo of a suspect and provides booking photos of other individuals with similar facial characteristics. Officer Parks then chose five photos from among those supplied by the computer program to create the array. Kirkwood, Cathey, and Dumas each selected Groves's photo from the array. In addition, each of the three witnesses signed and dated an Advice Form, circled Groves's picture on the photo array, and provided a short written statement below the photo array indicating that Groves was the perpetrator of the robbery he or she witnessed.

Sergeant Poindexter administered a photographic lineup to Lee in a similar, but not identical, manner as Officer Parks.[2] The primary difference in the approach of the two officers was that Sergeant Poindexter gave Lee additional instructions beyond the six bullet points listed on the Advice Form. Specifically, Sergeant Poindexter testified that, as is his usual practice when administering photographic lineups, he told Lee not to focus on hairstyle (as the suspect's hair may have changed from the time of

---

[2]The photographic array utilized by Sergeant Groves was identical to the array utilized by Officer Parks.

his most recent booking photograph) and not to be influenced by lighting. Instead, he told Lee to focus on the facial characteristics of the pictured individuals. Lee positively identified Groves from the photographic array, circled his photograph, and provided a written statement that Groves was the person who robbed him.

On August 19, 2008, Groves was indicted for, among other things, robbery of the two McDonald's restaurants and The Kettle Restaurant. On March 20, 2012, the government filed a superseding indictment, which charged Groves additionally with the robbery of the Popeye's restaurant. In his motion, Groves seeks to suppress the identifications provided by the four aforementioned witnesses, because the photographic lineups administered to them were allegedly unduly suggestive and unreliable. Specifically, Groves argues that the use of a simultaneous lineup is unduly suggestive because it makes the witness more likely to choose the photograph that most resembles the perpetrator, as opposed to the actual perpetrator. Groves argues that sequential lineups, in which the witness is presented with a number of photographs one after another, yield more accurate results. Groves also argues that the length of time between the robberies and the identifications, and the small percentage of witnesses who were able to positively identify Groves, support a finding that the identifications were unreliable.

## II. PROPOSED CONCLUSIONS OF LAW

When determining the admissibility of a pretrial identification, the court must "determine[] whether the identification procedure [was] 'unnecessarily suggestive and conducive to irreparable mistake in identification.'" United States v. Craig, 198 F. App'x 459, 466 (6th Cir. 2006) (quoting Stovall v. Denno, 388 U.S. 293, 302 (1967)). To assess the validity of a pretrial identification, the court conducts a two-step analysis:

> The court first considers whether the procedure was unduly suggestive. The defendant bears the burden of proving this element. If the court does find that the procedure was unduly suggestive, it next evaluates the totality of the circumstances to determine whether the identification was nevertheless reliable. Five factors that are considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.

Ledbetter v. Edwards, 35 F.3d 1062, 1070-71 (6th Cir. 1994); see also Gross v. Warden, Lebanon Corr. Inst., 426 F. App'x 349, 361-62 (6th Cir. 2011)(citing Ledbetter and discussing two-step analysis).[3] In evaluating whether a photographic array is unduly suggestive, courts consider several factors, including "the size of

---

[3] These five reliability factors were established by the Supreme Court in Neil v. Biggers, 409 U.S. 188 (1972), and are often referred to as the Biggers factors.

the array, the manner of its presentation by the officers, and the details of the photographs themselves." United States v. Stamper, 91 F. App'x 445, 459 (6th Cir. 2004)(quoting United States v. Sanchez, 24 F.3d 1259 (10th Cir. 1994)); see also Wade v. Sherry, No. 2:06-cv-237, 2009 WL 5196166, at *8 (W.D. Mich. Dec. 23, 2009); United States v. Escareno, No. 3:04-CR-132(1), 2006 WL 462432, at *3 (S.D. Ohio Feb. 22, 2006).

The court finds that the photographic lineups conducted by the MPD in this case were not unduly suggestive. The Sixth Circuit has routinely affirmed the admissibility of identifications made from simultaneous, six-photo arrays. See, e.g., United States v. Peterson, 411 F. App'x 857, 864-65 (6th Cir. 2011); Cornwell v. Bradshaw, 559 F.3d 398, 413-14 (6th Cir. 2009); United States v. Porter, 29 F. App'x 232, 237 (6th Cir. 2002).[4] Furthermore, simultaneous photographic lineups have been found admissible by other circuits, in spite of similar arguments pertaining to the availability of less suggestive alternatives. United States v. Frink, 328 F. App'x 183, 191-92 (4th Cir. 2009)(determining the use of a photographic array to be not impermissibly suggestive, despite noting that "presenting an array of photographs sequentially might

---

[4]In each of these cases, the court held that the array was not unduly suggestive, focusing its analysis on the content of the photographs in the array and whether the police officers made any suggestion, verbal or otherwise, as to which particular person was the suspect.

be ideal in terms of limiting misidentifications");[5] Schawitsch v. Burt, 491 F.3d 798, 802 (8th Cir. 2007)(affirming the district court's determination that a six-photo array procedure was not impermissibly suggestive, stating that "[w]hen there are no differences in appearance tending to isolate the accused's photograph, the identification procedure is not unnecessarily suggestive.").[6] In his motion, Groves refers to statistics compiled by the Innocence Project that suggest sequential lineups lead to more accurate identifications than simultaneous lineups. However, as indicated by the cited opinions, the test employed by courts when reviewing an identification is whether the identification procedure was unduly suggestive - not whether an arguably more accurate procedure existed. Groves has not presented any evidence that the size, contents, or presentation of the photographic array in this case was unduly suggestive.

Regarding the lineup administered to Lee, while the additional

---

[5] The appellants' argument in Frink relied, in part, on materials published by the U.S. Department of Justice, which recommend that law enforcement officers use sequential lineups.

[6] In United States v. Johnson, this court denied a motion to suppress identification in which the defendant, in part, claimed that the use of a photo array rather than a sequential showing of photographs was unduly suggestive. 282 F. Supp. 2d 808 (W.D. Tenn. 2003). The defendant in that case apparently offered no evidence "showing a sequential hearing is any less likely to result in a misidentification than is an array." Id. at 811. Because Groves has presented some evidence that arguably shows sequential identifications to be more accurate than photo arrays, the court finds that Johnson does not provide guidance on the issues before this court.

comments made by Sergeant Poindexter may have gone beyond those required by the MPD, the court finds that these additional statements did not render the identification unduly suggestive. Sergeant Poindexter's statements did not communicate any suggestion to the witness as to which photograph he should select. The instruction to focus on facial features rather than hair or lighting could, at best, be construed as implicitly telling the witness that the suspected robber was in the array. Similar remarks, however, have been held to be non-suggestive and permissible. See, e.g., Porter, 29 F. App'x at 237 (upholding the admission of a photo identification where the officer told the witness that the array contained the suspect, but did not suggest which of the six photos showed that suspect); United States v. Whitehead, 257 F. App'x 777, 783 (5th Cir. 2007)(holding that the instruction "not to focus on aspects of a person's appearance that are susceptible to change, such as hairstyle and facial hair, but rather [to] focus on unchangeable features such as 'their ears, their eyes, [and] their nose'" was not impermissibly suggestive). Thus, Sergeant Poindexter's manner of presenting the array was not suggestive.

As the court finds that the identifications were not unduly suggestive, it need not address the second step of the analysis to

determine whether or not the identifications were reliable.[7]

### III. RECOMMENDATION

For the reasons above, the court recommends that the motion to suppress be denied.

Respectfully submitted,

S/ Tu M. Pham
--------
TU M. PHAM
United States Magistrate Judge

September 5, 2012
--------
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[7]At the conclusion of the hearing, defense counsel requested an opportunity to call the identifying witnesses to question them about comments made by the officers during the lineups. The defense's stated purpose of these examinations would be to explore whether any such comments "could be construed as suggestive." The requested testimony is irrelevant to the objective analysis of whether the identification procedures themselves, which are undisputed, were unduly suggestive. The identifying witnesses' testimony would only pertain to the effects of the procedures on their identifications, and thus the reliability of the identifications themselves. Because the reliability prong was not reached in this analysis, it is unnecessary for the court to hear additional testimony from the identifying witnesses.